**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**STEIN & NIEPORENT LLP**
David Stein
1441 Broadway
Suite 6090
New York, New York 10018
(212) 308-3444
dstein@steinllp.com

Attorneys for Plaintiff

| | |
|---|---|
| Verna Moniesingh,<br><br>    Plaintiff,<br><br>        - vs. –<br><br>Best Senior Home Care, LLC, and Kevin Meaney,<br><br>    Defendants. | DOCKET NO. 23-cv-7206<br><br>**COMPLAINT** |

Plaintiff Verna Moniesingh, by and through her undersigned attorneys, for her complaint against defendants Best Senior Home Care, LLC, and Kevin Meaney, alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff Verna Moniesingh alleges that she is entitled to: (i) compensation for wages paid at less than the statutory minimum wage, (ii) unpaid wages from Defendant for overtime work for which she did not receive overtime premium pay as required by law, and (iii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because the Defendant's wage and hour law violations lacked a good faith basis.

2. Ms. Moniesingh further complains under the New York Labor Law that she is entitled to (i) compensation for wages paid at less than the statutory minimum wage; (ii) back wages for failure to pay wages for all hours worked; (iii) back wages for overtime work for which Defendant willfully failed to pay overtime premium pay as required by the New York Labor Law §§ 650 et seq. and the supporting New York State Department of Labor regulations; (iv) compensation for Defendant's violations of the spread-of-hours requirements of New York Labor Law; (v) compensation for Defendant's failure to the full compensation owed under New York's Wage Parity Act, Public Health Law § 3614-c; (vi) liquidated damages pursuant to New York Labor Law for these violations; and (vii) statutory damages for Defendant's violation of the Wage Theft Prevention Act.

## THE PARTIES

3. Plaintiff Verna Moniesingh is an adult individual residing in the Bronx, New York.

4. Defendant Best Senior Home Care, LLC (hereinafter, "BSHC"), is a domestic limited liability company organized under the law of the State of New York, with a principal place of business at 61-43 186th Street, Fresh Meadows, New York, 11365.

5. Defendant BSHC owns and operates a home health care service, placing home health and personal care aides at the homes of patients in the New York City Metropolitan area boroughs of Manhattan and Queens and the surrounding communities.

6. At all relevant times herein, defendant BSHC was a licensed home health care agency with contractual relationships with one or more managed care plans under which defendant BSHC was reimbursed by such managed care plans for services performed by its HHA employees.

7. At all relevant times herein, BSHC was an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

8. At all relevant times, defendant BSHC has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

9. Upon information and belief, at all relevant times, defendant BSHC has had gross revenues in excess of $500,000.00.

10. Upon information and belief, at all relevant times herein, defendant BSHC has used goods and materials produced in interstate commerce, and has employed at least two individuals who handled such goods and materials.

11. At all relevant times herein, Defendant constituted an "employer" of Ms. Moniesingh as that term is used in the Fair Labor Standards Act and New York Labor Law.

12. Upon information and belief, at all relevant times defendant Kevin Meaney has been an owner or part owner and principal of defendant BSHC, who has had the power to hire and fire employees, set wages and schedules, and maintain their records.

13. Defendant Kevin Meaney was involved in the day-to-day operations of defendant BSHC and played an active role in managing the business, including hiring and managing Ms. Moniesingh, and setting her schedules and pay.

14. At all relevant times herein, defendants BSHC and Kevin Meaney constituted "employers" of Ms. Moniesingh as that term is used in the Fair Labor Standards Act and New York Labor Law.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Ms. Moniesingh's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Ms. Moniesingh's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant's business is located in this district.

## FACTS

17. At all relevant times herein, defendants owned and operated a home health agency based in Queens, New York.

18. Ms. Moniesingh was employed as a home health aide ("HHA") at BSHC from approximately February 2015 until May 2021, working at the homes of patients located in Manhattan, Queens, and Long Island during her employment.

19. Plaintiff's work was performed in the normal course of BSHC's business, was integrated into the business of BSHC, and did not involve executive or administrative responsibilities.

4

20. At all relevant times herein, Ms. Moniesingh was an employee engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

21. During her employment by defendants, Ms. Moniesingh regularly worked significantly more than 40 hours per week as a result of her typically working between two and seven 24-hour live-in shifts per week, as well as "fill-in" shifts lasting between eight and twelve hours per day on the other days of the week throughout most of her employment by defendants.

22. During certain periods of Ms. Moniesingh's employment by defendants, she worked twelve-hour shifts, seven days per week, either from morning until evening, or vice versa overnight.

23. During certain periods of her employment when Ms. Moniesingh worked twelve-hours shifts daily from the evening until the morning at the home of one patient, she also worked eight-hour daytime shifts daily at another patient's home before returning to the first patient's home to work the next overnight shift.

24. Defendant Kevin Meaney hired Ms. Moniesingh as an HHA in early 2015 immediately following his in-person interview of her at BSHC's offices then located at 5335 215th Street, Bayside, New York, after she had completed and signed an application for employment there.

25. When Ms. Moniesingh was hired, defendant Meaney informed her verbally that she would be paid $12 per hour.

26. On or about that same day, defendant Meaney assigned Ms. Moniesingh to begin working 24-hour, live-in weekend shifts from Friday evening until Sunday evening a BSHC patient's home located on West End Avenue in Manhattan.

27. Ms. Moniesingh immediately began working such live-in 24-hour shifts in Manhattan and continued to do so for approximately six weeks, while also working "fill-in" shifts lasting twelve hours daily at the homes of other patients during the mid-week period, which shifts where assigned to her by BSHC's care coordinator, "Larissa".

28. This BSHC patient required significant assistance from Ms. Moniesingh throughout the night, resulting in Ms. Moniesingh's inability to sleep at least five hours, uninterrupted, during each live-in shift.

29. Ms. Moniesingh informed defendant Meaney, as well as BSHC's care coordinator, Larissa, on multiple occasions via text message and telephone calls, of the sleep issues during her live-in weekend shifts. However BSHC did not take any action to remedy the issue.

30. Consequently, Ms. Moniesingh was working approximately 84 hours per week during this period of her employment by defendants.

31. On or about March 2015, BSHC assigned Ms. Moniesingh to begin working 24-hour, live-in shifts, seven days per week, at the home of an Alzheimer's patient, "Sylvia," who lived on Cherry Avenue in Queens.

32. "Sylvia" required significant assistance from Ms. Moniesingh throughout the night, resulting in Ms. Moniesingh's inability to sleep at least five hours, uninterrupted, during each shift.

33. Ms. Moniesingh again informed defendant Meaney and BSHC's care coordinator, Larissa, of these sleep issues on multiple occasions via text message and telephone calls; however BSHC did not take any action to remedy the issue.

34. Consequently, Ms. Moniesingh was working approximately 168 hours per week during this period of her employment by Defendants.

35. On or about June 2015, "Sylvia" passed away, and Ms. Moniesingh was next assigned by defendants to work overnight shifts, from 6 p.m. until 10 a.m. the following morning, three days per week, at the home of "Molly" and "Sam", both also Alzheimer's patients, in Bayside, Queens.

36. Ms. Moniesingh also worked "fill-in" shifts assigned by defendants, each lasting twelve hours, three days per week, when she was not working at the home of "Molly" and "Sam".

37. Consequently, Ms. Moniesingh was working 84 hours per week during this period of her employment by Defendants.

38. On or about August 2015, defendants assigned Ms. Moniesingh to work at the home of "Adam" in Flushing, New York, seven days per week, from 8 a.m. until 8 p.m.

39. Ms. Moniesingh worked such shifts for defendants during the subsequent three years until "Adam" passed away on or about August 2018. Ms. Moniesingh was working 84 hours per week during this period of her employment.

40. Defendants next assigned Ms. Moniesingh to work live-in shifts each weekend, from Saturday morning at 8 a.m. until Monday morning at 8 a.m., at a

patient's home in Fresh Meadows, Queens, which Ms. Moniesingh performed for approximately one year, until early 2019.

41. Defendants also assigned Ms. Moniesingh to work "fill-in" weekday shifts, eight hours per day, each weekday, during that same one-year period of her employment by defendants.

42. Consequently Ms. Moniesingh was working approximately 88 hours per week during this period of her employment by defendants.

43. In early 2019, defendants assigned Ms. Moniesingh to work at the home of two patients, a husband and wife, in Queens Village, New York, four to five nights per week from 8 p.m. until 8 a.m.

44. For the first six months that Ms. Moniesingh was working in Queens Village, defendants also assigned Ms. Moniesingh to work eight-hour daytime shifts daily, seven days per week, at the Great Neck, New York home of another BSHC patient.

45. Consequently, Ms. Moniesingh was working approximately 116 hours per week during this period of her employment by defendants.

46. Defendants then assigned Ms. Moniesingh to work live-in shifts at the same Queens Village home days five per week. The Queens Village patients required significant assistance from Ms. Moniesingh throughout the night, resulting in her inability to sleep at least five hours, uninterrupted, during each shift.

47. Ms. Moniesingh informed defendant Meaney and BSHC's care coordinator, Larissa, of these sleep issues on multiple occasions via text message and telephone calls, however defendants did not take any action to remedy the issue.

8

48. Consequently Ms. Moniesingh was working approximately 120 hours per week during this period of her employment by defendants.

49. During the Covid-19 pandemic from March 2020 through May 2020, Ms. Moniesingh worked live-in shifts daily, seven days per week at the same Queens Village home. As a result, Ms. Moniesingh was typically working approximately 168 hours per week during that period of her employment by defendants.

50. From June 2020 until the end of her employment in May 2021, Ms. Moniesingh worked four live-in shifts per week at the same Queens Village home, and consequently was working approximately 96 hours per week during that period of her employment by defendants.

51. Throughout her employment by defendants, Ms. Moniesingh was paid bi-weekly by check, with a paystub, initially at an hourly rate of $12 per hour, then later $15 per hour.

52. When Ms. Moniesingh worked for two patients in Queens Village, defendants paid Ms. Moniesingh $15 per hour for the first patient, but only $6 per hour for the second patient.

53. In mid-2020, defendant Meaney asked Ms. Moniesingh to supply him with the name of a friend of hers to whom BSHC could issue a separate bi-weekly paycheck in order to compensate her for additional hours worked each week in order to conceal the fact that she was working more than 40 hours each week.

54. At that time, Ms. Moniesingh gave defendant Meaney the name of her friend, "Miss Nellie" so that BSHC could issue the separate paycheck as defendant Meaney requested.

9

55. BSHC then began issuing bi-weekly paychecks to "Miss Nellie" for twenty hours per week, at the same hourly rate of pay Ms. Moniesingh was receiving, even though "Miss Nellie" performed no work for defendants.

56. Ms. Moniesingh collected each such paycheck from defendants and then gave each such paycheck to "Miss Nellie" to endorse and return to Ms. Moniesingh so that she could deposit these checks in her own bank account.

57. Defendant BSHC issued a W-2 to "Miss Nellie" reflecting the paychecks issued to her.

58. Ms. Moniesingh's pay stubs did not reflect her actual hours worked, as defendants only paid her for 12 or 13 hours per day for each live-in shift instead of 24 hours, and only paid her for forty hours per week during the final year of her employment as a result of the above-described arrangement with her friend, "Miss Nellie."

59. From the beginning of Ms. Moniesingh's employment by defendants until early 2021, defendants did not utilize any system for her to use to keep track of time she worked each day or each week.

60. During the final few months of Ms. Moniesingh's employment by defendants, she used her employee ID number to call into defendant BSHC from her patient's phone to "clock in" and "clock out" at the beginning and end of each daily shift.

61. Throughout her employment by defendants, Ms. Moniesingh's effective rate of pay was at times below the statutory New York City minimum wage in effect at relevant times.

62. Defendants' failure to pay Ms. Moniesingh an amount at least equal to the New York City minimum wage in effect during relevant time periods was willful, and lacked a good faith basis.

63. Defendants failed to pay Ms. Moniesingh wages for all hours worked, in part because she usually did not receive at least five uninterrupted hours of sleep per day during live-in shifts.

64. Ms. Moniesingh complained to the BSHC care coordinators by telephone on multiple occasions during her employment by telephone about the sleep interruptions she usually experienced while working live-in shifts for defendants.

65. In addition, defendants failed to pay Ms. Moniesingh any overtime "bonus" for hours worked beyond 40 hours in a given workweek, in violation of the FLSA, the New York Labor Law, and the supporting New York State Department of Labor regulations.

66. Defendants' failure to pay Ms. Moniesingh the overtime bonus for overtime hours worked was willful, and lacked a good faith basis.

67. Defendants also failed to pay Ms. Moniesingh an additional hour's pay at the New York minimum wage for each shift that exceeded 10 hours, in violation of New York labor law and its supporting regulations.

68. Defendant BSHC received reimbursements from one or more managed care plans funded by New York State Medicaid funds for Ms. Moniesingh's services.

69. Throughout Ms. Moniesingh's employment by Defendants, Defendants failed to pay her the total minimum compensation required by the Wage Parity Law.

70. Defendants failed to provide Ms. Moniesingh with a written notice providing the information required by the Wage Theft Prevention Act – including, *inter alia*, BHSC's contact information, plaintiff's regular and overtime rates, and intended allowances claimed – and failed to obtain her signature acknowledging the same, upon her hiring or at any time thereafter, in violation of the Wage Theft Prevention Act in effect at the time.

71. Defendants failed to provide Ms. Moniesingh with accurate weekly records of her compensation and hours worked, in violation of the Wage Theft Prevention Act.

72. Upon information and belief, while defendants employed Ms. Moniesingh, and through all relevant time periods, defendants failed to maintain accurate and sufficient time records or provide accurate records to employees.

73. Upon information and belief, while defendants employed Ms. Moniesingh, and through all relevant time periods, defendant failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA or New York Labor Law.

## COUNT I

### (New York Labor Law – Minimum Wage)

74. Ms. Moniesingh repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

75. At all relevant times, Ms. Moniesingh was employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

76. Defendants willfully violated Ms. Moniesingh's rights by failing to pay her compensation in excess of the statutory minimum wage in violation of the New York Labor Law §§ 190-199, 652 and their regulations.

77. Defendants' failure to pay compensation in excess of the statutory minimum wage was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

78. Due to Defendants' New York Labor Law violations, Ms. Moniesingh is entitled to recover from Defendants her unpaid compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT II

### (Fair Labor Standards Act - Overtime)

79. Ms. Moniesingh repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

80. At all relevant times, defendants employed Ms. Moniesingh within the meaning of the FLSA.

81. At all relevant times, defendants had a policy and practice of refusing to pay overtime compensation to its employees for hours they worked in excess of forty hours per workweek.

82. As a result of defendants' willful failure to compensate Ms. Moniesingh at a rate at least one-and-one-half times the regular rate of pay for work performed in excess of forty hours per workweek, defendants have violated the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

83. The foregoing conduct, as alleged, constituted a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacked a good faith basis within the meaning of 29 U.S.C. § 260.

84. Due to defendants' FLSA violations, Ms. Moniesingh is entitled to recover from defendants her unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of their action, pursuant to 29 U.S.C. § 216(b).

**COUNT III**

**(New York Labor Law - Overtime)**

85. Ms. Moniesingh repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

86. At all relevant times, Ms. Moniesingh was employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

87. Defendants willfully violated Ms. Moniesingh's rights by failing to pay her overtime compensation at rates at least one-and-one-half times the regular rate of pay for each hour worked in excess of forty hours per workweek in violation of the New York Labor Law §§ 650 et seq. and its supporting regulations in 12 N.Y.C.R.R. § 146.

88. Defendants' failure to pay overtime was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

89. Due to defendants' New York Labor Law violations, Ms. Moniesingh is entitled to recover from Defendants her unpaid overtime compensation, liquidated

damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT IV

### (New York Labor Law – Failure to Pay For All Hours Worked)

90. Ms. Moniesingh repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

91. At all relevant times, Ms. Moniesingh was employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

92. At all relevant times, defendants had a policy and practice of failing to pay Ms. Moniesingh for all hours worked, and instead only paid her for thirteen hours each day, and/or only 40 hours per week, even though she usually did not receive five hours of uninterrupted sleep each night during live-in shifts, and regularly worked in excess of 40 hours per week.

93. As a result of defendants' willful failure to compensate Ms. Moniesingh for all hours worked, defendants violated the NYLL.

94. Such conduct by defendants was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

95. Due to defendants' New York Labor Law violations, Ms. Moniesingh is entitled to recover from defendants her unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT V

### (New York Labor Law – Wage Parity Law Violations)

96. Ms. Moniesingh repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

97. At all relevant times, Ms. Moniesingh was employed by the defendants within the meaning of the New York Labor Law, §§ 2 and 651.

98. At all relevant times, Defendants failed to pay Ms. Moniesingh the applicable total compensation required under the Wage Parity Law.

99. Defendants' failure to pay Ms. Moniesingh the total compensation as required by the Wage Parity Law was willful and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

100. Due to defendants' New York Labor Law violations, Ms. Moniesingh is entitled to recover from defendants damages for defendants' failure to pay the total compensation required under the Wage Parity Law, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT VI

### (New York Labor Law – Spread of Hours)

101. Ms. Moniesingh repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully again herein.

16

102. At all relevant times, Ms. Moniesingh was employed by defendants within the meaning of New York Labor Law §§ 2 and 651.

103. Defendants willingly violated Ms. Moniesingh's rights by failing to pay her an additional hour's pay at the minimum wage for each day she worked a shift lasting in excess of ten hours from start to finish, in violation of the New York Labor Law § 198, § 163 and supporting regulations.

104. Defendants' failure to pay Ms. Moniesingh the spread-of-hours compensation was willful and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

105. Due to defendants' New York Labor Law violations, Ms. Moniesingh is entitled to recover from Defendant her unpaid spread-of-hours compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT VII

### (New York Labor Law – Wage Theft Prevention Act)

106. Ms. Moniesingh repeats, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

107. At all relevant times, Ms. Moniesingh was employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

108. Defendants willfully violated Ms. Moniesingh's rights by failing to provide her with the wage notice required by the Wage Theft Prevention Act when she were hired, or at any time thereafter.

109. Defendants willfully violated Ms. Moniesingh's rights by failing to provide her with weekly wage statements required by the Wage Theft Prevention Act at any time during their employment.

110. Due to defendants' New York Labor Law violations relating to the failure to provide paystubs, Ms. Moniesingh is entitled to recover from defendants statutory damages of $250 per day from February 27, 2015 through the end of her employment, up to the maximum statutory damages.

111. Due to defendants' New York Labor Law violations relating to the failure to provide wage notices, Ms. Moniesingh is entitled to recover from the defendants statutory damages of $50 per day from February 27, 2015, to the termination of her employment, up to the maximum statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Moniesingh respectfully requests that the Court grant the following relief:

   a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

   b. An injunction against the defendants, their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

   c. A compensatory award of unpaid compensation, at the statutory overtime rate, due under the FLSA and the New York Labor Law;

    d.    Compensatory damages for failure to pay wages for all hours worked under the FLSA and New York Labor Law;

    e.    Compensatory damages for failure to pay the minimum wage pursuant to New York Labor Law;

    f.    Compensatory damages for failure to pay total compensation required by the New York Wage Parity Law;

    g.    Compensatory damages for failure to pay the spread-of-hours compensation pursuant to New York Labor Law;

    h.    An award of liquidated damages as a result of defendants' willful failure to pay overtime pursuant to 29 U.S.C. § 216;

    i.    Liquidated damages for defendants' New York Labor Law violations;

    j.    Statutory damages for defendants' violation of the New York Wage Theft Prevention Act;

    k.    Back pay;

    l.    Punitive damages;

    m.    An award of prejudgment and post-judgment interest;

    n.    An award of costs and expenses of their action together with reasonable attorneys' and expert fees; and

    o.    Such other, further, and different relief as the Court deems just and proper.

Dated: September 27, 2023

_____
David Stein
**STEIN & NIEPORENT LLP**
1441 Broadway
Suite 6090
New York, New York 10018
(212) 308-3444
dstein@steinllp.com
Attorneys for Plaintiff